**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

DOUGLAS CAMPBELL,                     *
                                      *
     Plaintiff,                     *
                                      *
vs.                                   *    CIVIL ACTION NO.: 14-00344-CG-B
                                      *
BLAKE LAMBERT, *et al.*,              *
                                      *
     Defendants.                    *

## REPORT AND RECOMMENDATION

Plaintiff, Douglas Campbell, proceeding *pro se* and *in forma pauperis* filed a complaint seeking relief under 42 U.S.C. § 1983. (Doc. 1). This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. CivLR 72(a)(2)(R), and is now before the undersigned on Defendants Blake Lambert and David Gibson's Motion for Summary Judgment. (Docs. 29, 39, 40). After careful consideration of Defendants' motion and supporting materials, and Plaintiff's response in opposition (doc. 52), the undersigned recommends that Defendants' motion be **GRANTED** and this action be **DISMISSED** with prejudice.

## I.    SUMMARY OF FACTUAL ALLEGATIONS

The relevant facts from Plaintiff's complaint disclose the following events. On May 8, 2014 — the date on which Plaintiff sustained the injury that forms the basis of this action — he was an Alabama state prisoner being housed at the Mobile Work Release Facility. Although incarcerated in Mobile, Plaintiff was assigned to a crew picking up litter on the roadways for the Alabama Department

of Transportation. (Doc. 1 at 8). Plaintiff avers that on the above-referenced date, while performing his assigned tasks, he stepped into a hole and broke his ankle around 11:15 a.m. According to Plaintiff, he fell to the ground, called out for aid, and was assisted by a fellow inmate. (Id.). Defendant Lambert and the other inmate escorted Plaintiff, who was in serious pain, back to the truck. (Id.).

Plaintiff avers that Lambert called his supervisor, Defendant Gibson, to advise him that Plaintiff had been injured, was in pain, and would not be able to walk or work because his foot appeared to be broken. (Id.). Plaintiff avers that while Gibson ordered Lambert to return Plaintiff the Mobile Work Release Center ("MWRC"), Lambert contacted MWRC and it is his belief that Lambert was instructed to take Plaintiff to the emergency room. (Id. at 8-9). According to Plaintiff, Lambert informed Gibson of the directive from MWRC, and Gibson again ordered Lambert to return Plaintiff to MWRC. (Id. at 9).

Lambert and the inmates left the work site, and Plaintiff was returned to MWRC at approximately 12:20 p.m. per Plaintiff. (Id.). Upon arrival, Plaintiff was assisted inside to the nurse's station where he was examined. (Id.) The nurse who examined him surmised that his ankle was broken. (Id.). Plaintiff was then taken to the infirmary at Fountain Correctional Facility, where he arrived around

2

1:30 p.m. (Id. at 9-10).[1]  Plaintiff was examined by a nurse, who also took his vital signs, wrapped his foot in a bandage, provided him with a bag of ice, and gave him pain medication and a bed in the infirmary ward. (Id. at 10).

Plaintiff asserts that he was in a lot of pain, and that four days later, on May 12, 2014, he was finally seen by a doctor and an X-Ray technician. (Id.). Their examination revealed that Plaintiff's foot was broken in two places. (Id.). The doctor placed Plaintiff in a cast and released him back to MWRC. (Id.). According to Plaintiff, the pain medication he was given was insufficient to manage his pain, so he was given aspirin, which also did not help. (Id.). Plaintiff was also given a "special needs communication form" which stated that he was to receive a bottom bunk, avoid prolonged standing, and be provided extra blankets to elevate his foot.[2] (Id.).

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs, that he was not seen by a doctor until four days after his injury, and that as a result of the delay in treatment, he suffered permanent and irreparable damage to his foot

---

[1] Plaintiff also avers, in passing, that he believes "they" are receiving his benefits because "all my money goes up front to them", and he only receives $2 a day for 8 hours of work at ALDOT. (Doc. 1 at 10). Because Plaintiff has not identified the individuals or entity he believes are receiving his benefits, and has not developed this argument, the Court deems the argument abandoned; thus, the Court has not addressed it.

[2] Plaintiff claims that one of the officers took the extra blankets away from him. (Id.)

and that the treatment received was not sufficient. (Id.; Doc. 52 at 1-2, 5).

On June 11, 2016, Defendant Lambert filed his Answer and Special Report denying Campbell's allegations against him and denying that any of Plaintiff's constitutional rights were violated. (Docs. 29, 29-1). Defendant Gibson filed his Answer and Special Report denying the same on September 6, 2016. (Docs. 39, 39-1). In their Special Reports, Defendants argue that they are entitled to Eleventh Amendment immunity in this action and that Plaintiff has failed to sufficiently allege a serious medical need in order to state an actionable Eighth Amendment claim. Defendants further assert that Plaintiff cannot establish that he suffered from a serious medical need or that Defendants' action or inaction caused Plaintiff's pain or condition to become worse. Defendants also contend that Plaintiff cannot defeat summary judgment on his claims because his allegations are conclusory and unsupported by actual evidence. (Docs. 29-1 at 2, 39-1 at 2-3). Additionally, Defendants argue that Plaintiff cannot overcome qualified immunity, and that any actual injury suffered during the event was *di minimis*; thus, any claims for monetary damages are barred by the Prison Litigation Reform Act. (Id.).

In support of their Special Reports, Lambert and Gibson have submitted sworn affidavits and other documents. (Docs. 29-2, 29-3, 29-4, 29-5, 29-6, 39-2). In Lambert's affidavit, he states that he

has been employed by the Alabama Department of Transportation ("ADOT") for more than nine (9) years, and that the agency uses inmate labor to maintain the roadways.  Lambert's duties include monitoring employees and inmates, operating ALDOT vehicles, operating equipment and other tasks as necessary to maintain the roadways. (Doc. 29-2 at 1).

According to Lambert, on May 8, 2014, he transported Campbell and other inmates from MWRC to a work assignment located on US 43/AL-13 in Mobile to pick up litter on the side of the roadway. (Id. at 2). Lambert states that at approximately 10:10 A.M., he noticed other inmates assisting Plaintiff. (Id.). He asked Plaintiff what happened, and helped Plaintiff walk to the truck. (Id. at 3). Plaintiff advised that he had fallen in a hole and his ankle was hurting. (Id.) Lambert recalls that there were no bones protruding from the skin or any other indication that Plaintiff's injury required emergency medical treatment or immediate care by a physician. (Id.). He further states that Plaintiff was calm, was talking, and that he was able to walk with assistance. (Id.).

According to Lambert, he exercised his judgment and contacted his supervisor, Defendant Gibson, and notified him about Plaintiff's injury, and that it was not life-threatening. Lambert did not call MWRC because he did not have the telephone number. (Id.). Defendant Gibson contacted MWRC as per the ADOC policy, and he instructed Lambert

to take Plaintiff back to MWRC. (Id.).  Lambert states that he followed the instructions and promptly drove Plaintiff back to MWRC. (Id.).

Lambert avers that they arrived at the MWRC facility around 11:10 A.M., and that he helped Plaintiff to the door with the assistance of another inmate. (Id.). He advised the intake officer that Plaintiff was hurt, and needed care. (Id.). Lambert also recalled speaking with another officer, who he believes was Sergeant Jackson, about Plaintiff's injury. (Id. at 3-4). He left the MWRC facility at approximately 11:14 A.M., and at the time, it was his understanding that ADOC would provide Plaintiff with proper medical assistance. (Id. at 4). Lambert submitted the Global Positioning System (GPS) records from the truck that he was driving on the day of the incident, and indicates that he relied on those records to determine the times listed in his affidavit. (Docs. 29-4, 29-5).

In Defendant Gibson's affidavit, he avers that he retired  from ADOT on December 31, 2015, and during his tenure with ADOT, he served 23 years as a Transportation Maintenance Superintendent. (Doc. 39-2 at 1). As Superintendent, his duties included supervising crews assigned to do maintenance on roadways and road signs, inspecting and observing crews and contractors during and after work has been completed, calculating quantities of materials needed to perform the various jobs, monitoring employees and inmates, and any other tasks necessary to maintain the roads. (Id. at 1-2).

Gibson states that he does not have an independent recollection of the events that form the basis of Plaintiff's lawsuit. (Id. at 2). However, Gibson asserts that during his tenure, he supervised ADOT crew leaders who were responsible for overseeing inmates to pick up litter on roadways/highways in Mobile. According to Gibson, per the training he received from ADOC, if Lambert had contacted him regarding an injury sustained by an inmate while on a work crew, he would have directed Lambert to determine whether the injury was a serious life threatening injury or one that required medical attention, and to return the inmate to the MWRC if he determined the injury was non life threatening. Gibson also avers that he would not have directed Lambert to disregard an instruction from MWRC to take an inmate to a hospital emergency room. (Id.). He further asserts that he was not involved in making decisions regarding Plaintiff's medical care. (Id.).

Defendant Lambert also submitted the sworn affidavit of Lieutenant Jeffery Jackson. (Doc. 29-6). Sergeant Jackson states that at the time of the incident, he was employed as a Correctional Sergeant assigned to the MWRC. (Id. at 1). He serves as the Job Placement Officer, and states that he would have been the first point of contact for independent work squad supervisors. (Id.). According to Sergeant Jackson, he has no independent recollection of the specific incident involving Plaintiff. However, if a non-life

7

threatening injury had occurred to an inmate on a work squad, the appropriate course of action would be for the supervisor to transport the inmate back to the MWRC, not a free-world hospital, for evaluation by the ADOC medical staff. (Id. at 1-2).

Defendants also submitted a copy of materials from ADOC detailing safety regulations. (Doc. 29-3). Relevant to the instant case is the document entitled "Rules and Key Issues for Departmental and Non-Departmental Supervisors". (Id. at 6). Specifically, rule number seven provides: "If an inmate declares a medical emergency or has a minor injury, contact the institutional contact person. If the injury is life threatening, you will need to call for medical aid (ambulance) and make the institution aware immediately. Remember, in all instances, use "Good Judgment"." (Id.).

Defendants' Answers, Special Reports, and supporting materials were converted into a Motion for Summary Judgment on October 12, 2016. (Doc. 40). The parties were notified of the effects of the conversion and provided an opportunity to file briefs and materials in support of or in opposition to the motion. (Id.). Defendants filed a Joint Supplemental Special Report on November 17, 2016. (Doc. 43). In the Special Report, Defendants assert that Plaintiff's claims are due to be dismissed because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). (Id.). Defendants submitted affidavits, a copy of the Inmate

Admission and Orientation Handbook, and Plaintiff's acknowledgement of receipt of that handbook in support of their supplement. (Docs. 43-1, 43-2, 43-3, 43-4). Plaintiff filed a response in opposition to Defendants motion for summary judgment and his affidavit on February 24, 2017. (Doc. 52).

The summary judgment motion has been fully briefed and is now ready for resolution.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>Garczynski</u> <u>v. Bradshaw</u>, 573 F. 3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'" (citation omitted)(emphasis in original)).

> The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has

failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013)(citations omitted).

As noted *supra*, in considering whether the Defendants are entitled to summary judgment in this case, the Court has viewed the facts in the light most favorable to Plaintiff. Comer v. City of Palm Bay, 265 F.3d 1186, 1192 (11th Cir. 2001)("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.")(citations omitted). The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." Garczynski, 573 F.3d at 1165 (internal citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. Id.

10

Moreover, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1176, 167 L. Ed. 2d 686 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. Aug. 20, 2011)("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record – such that no reasonable jury could believe it – a court should not adopt the contradicted allegations." (citations omitted)(unpublished)).[3]

Additionally, the undersigned recognizes that while the Court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as de facto counsel for a party… or to rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs. Inc. v. Cnty. Of Escambia, Fla., 132 F. 3d 1359, 1369 (11th Cir. 1998)(citations omitted), overruled on other grounds by Randall v. Scott, 610 F. 3d 701 (11th Cir. 2010); see also Giles v. Wal-Mart Distrib. Ctr., 359 F. App'x 91, 93 (11th Cir. 2009)(internal citations and quotations omitted)("Although pro se pleadings are held to a less strict standard than pleadings filed by lawyers and are thus construed liberally, this liberal construction does not give

_____

[3] "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." 11th Cir. R. 36-2.

a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.").

Based on a liberal construction of Plaintiff's complaint, the Court construes his factual allegations as asserting a claim for deliberate indifference to Plaintiff's medical injury following his injury on the job site on May 8, 2014.  The undersigned will discuss this claim against the individual Defendants below.

## III. <u>DISCUSSION</u>

### a. Qualified Immunity

Plaintiff indicates that he is suing Defendants in their individual capacities. (Doc. 1 at 7). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002)(quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). Qualified immunity from suits is intended to "allow government officials to carry our their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002)(internal quotation marks and citations omitted).

An official asserting the affirmative defense of qualified

immunity from an individual capacity suit must initially establish that he was acting within his discretionary authority. <u>Mathews v. Crosby</u>, 480 F.3d 1265, 1269 (11th Cir. 2007). In this case, no one disputes that Defendants Lambert and Gibson were acting in the scope of their discretionary authority as employees of ADOT during the period in which they interacted with Plaintiff.

If an official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. Overcoming the official's qualified immunity defense involves two steps. First, the plaintiff must establish that the defendant's conduct violated a statutory or constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Next, the plaintiff must show that the violation was "clearly established." <u>Id.</u> Both elements of this test must be satisfied for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case. <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S. Ct. 808, 821, 172 L. Ed. 2d 565 (2009); <u>Brown v. City of Huntsville</u>, 608 F.3d 724 (11th Cir. 2010).

Based upon a careful review of the record evidence, the undersigned finds that Plaintiff has failed to point to sufficient evidence of a constitutional violation that caused harm to him; thus, that ends the inquiry. See <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S. Ct.

13

2151, 150 L. Ed. 2d 272 (2001)(finding that in analyzing a qualified immunity case, a court should first ask whether. "on the facts alleged, a constitutional violation could be found.").

### b. Inadequate Medical Care

As noted *supra*, Campbell contends that Defendants provided him with inadequate medical care when he was injured while working for an ADOT road crew. The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." US CONST. amend. VIII. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs. Campbell v. Sikes, 169 F. 3d 1353, 1363 (11th Cir. 1999)(citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). In Sims v Mashburn, 25 F. 3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F. 3d at 983 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Thus, to demonstrate that Defendants had a deliberate indifference to a serious medical need, Plaintiff must show "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and

14

(3) causation between that indifference and the plaintiff's injury.
Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009).
"A serious medical need is one that has been diagnosed by a physician
as mandating treatment or one that is so obvious that even a lay person
would easily recognize the necessity for a doctor's attention." Id.
at 1307.  "In the alternative, a serious medical need is determined
by whether a delay in treating the need worsens the condition." Id.

Viewing the facts of this case in the light most favorable to
Plaintiff, on May 8, 2014, he fell into a hole at a job site at
approximately 11:15 a.m., and just over an hour later, he was returned
to MWRC for evaluation at the nursing unit.  While Plaintiff contends
that he should have been taken directly to a hospital emergency room
instead of being returned to the MWRC facility, there is no evidence
that his condition worsened between the time he was transported from
the worksite and returned to the MWRC facility. The evidence is
undisputed that Plaintiff reported that he had fallen in a hole and
his foot was hurting, that he was not able to place any weigh on his
foot and required assistance to walk, and that while his foot was
first wrapped in a bandage, it was later determined that he had broken
his foot in two places, and a cast was placed on his foot.  Under these
facts, the undersigned finds that notwithstanding Lambert's assertion
that he did not see any bones protruding out of Plaintiff's skin or
any other indication of injury immediately after his fall,  case law

within this Circuit indicates that a broken foot constitutes a serious medical condition. See Brown v. Hughes, 894 F. 2d 1533, 1538-39 (11th Cir. 1990).

The next question is whether Defendants were deliberately indifferent to Plaintiff's serious medical need. "Deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106; Farmer v. Brennan, 511 U.S. 825, 835 (1994).

> The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety*; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow v. West, 320 F.3d 1235, 1245-46 (11th Cir. 2003).

In this case, there is no dispute that Lambert returned Plaintiff to the MWRC just over an hour after his fall, and that Plaintiff was seen by medical personnel upon arrival. To the extent Plaintiff is dissatisfied with and is seeking to hold Defendants responsible for the medical treatment he received after being transported back to the MWRC facility, there is nothing before the Court suggesting that

16

Defendants played any role in or had any involvement in the medical treatment Plaintiff received through MWRC; thus, any such claim must fail. By Plaintiff's own admission, Lambert relinquished control of him immediately upon returning him to MWRC a little over an hour after the injury occurred.[4] (Doc. 1 at 9; Doc. 29-1 at 4-5). Gibson's involvement was confined to advising Lambert on the proper course of action upon being notified of Plaintiff's fall, as he was not physically present at the work site. (Doc. 39-2 at 2). Therefore, to the extent that Plaintiff is claiming that Defendants should be held liable for an Eighth Amendment violation that occurred after he was taken back to the MWRC facility, that claim fails on its merits. Defendants were not present for later treatment decisions, and did not have any authority over the decisions of the employees of MWRC, ADOC or the medical staff.[5]

The Court now turns to Plaintiff's claims that Defendants

---

[4] While Plaintiff's and Lambert's timing of Plaintiff's fall and his arrival back at the MWRC facility differ a bit, both have Plaintiff being returned to MWRC a little over an hour after his injury. (Doc. 1 at 8-9, Doc. 29-2 at 2-3).

[5] The Court notes that Defendants argued in their supplemental brief that Plaintiff has not exhausted all administrative grievance procedures within the facility at the time of filing this action. (Doc. 43). However, because this argument was not asserted in Defendants' Special Report, the Court will not consider it in what amounts to a reply brief. See Kirksey v. Schindler Elevator Corp., 2016 WL 7116223, n. 9, 2016 U.S. Dist. LEXIS 73666, *70 (S.D. Ala. June 7, 2016) (internal citations omitted); Brown v. CitiMortgage, Inc., 817 F. Supp. 2d 1328, 1332 (S.D. Ala. Oct. 11, 2011); Herring v. Secretary, Dep't of Corrections, 397 F.3d 1338, 1342 (11th Cir. 2005).

violated his constitutional rights by not immediately transporting him to a hospital emergency room in order to get treatment for his injury. There is no dispute that Lambert did not call for an ambulance or take Plaintiff directly to a hospital. Instead, he returned Plaintiff to MWRC, where he was immediately seen by medical personnel. (Docs. 1 at 9-10; 29-2 at 3-4). While Plaintiff claims that Defendants were instructed by MWRC to take Plaintiff immediately to the emergency room (doc. 1 at 9), claims that both Lambert and Gibson refute, the Court finds that their alleged disregard of MWRC's directive does not establish a violation of Plaintiff's constitutional rights.

Deliberate indifference may result not only from failure to provide medical care at all, but also from excessive delay. "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." McElligott v. Foley, 182 F. 3d 1248, 1255 (11th Cir. 1999). In this case, even accepting Plaintiff's version of the facts as true, it is not possible to conclude that Defendants acted with deliberate indifference to Plaintiff's medical needs or that Defendants displayed conduct beyond mere negligence. To the contrary, Plaintiff's complaint establishes that Lambert transported him back to the MWRC facility a little over an hour after discovery of his injury — this includes the time required to assist Plaintiff back to the van, access his injury, notify Gibson, and

18

transport Plaintiff the approximately twenty-two miles back to the MWRC facility. (Docs. 29-2, 29-4). Plaintiff points to nothing in the record that suggests any local hospitals were closer to the work site than the MWRC facility. Indeed, in his affidavit, Lambert avers that there was not a hospital between the work site and the MWRC facility, and Plaintiff does not dispute that information. (Doc. 29-2 at 3).

Further, the evidence is undisputed that Lambert, who was at the work site, immediately accessed Plaintiff's injury, and apprised Gibson of the situation. As there was no evidence that Plaintiff's injury was life threatening, Defendants acted in accordance with ADOC policy and returned Plaintiff, without delay, to the MWRC facility, where he was immediately treated by medical personnel. Additionally, Plaintiff has not offered any evidence of "causation between [Defendants' alleged] indifference and [his] injuries." Mann, 588 F.3d at 1307.  Simply put, Plaintiff has not pointed to any evidence that suggests that the actions of Defendants caused his injuries, or caused his condition to somehow worsen. [6] The record is totally devoid of any evidence that suggests that Plaintiff's prognosis and

---

[6] While Plaintiff contends he suffered permanent and irreparable harm, he offers no medical evidence of such. Further, assuming that Plaintiff has sustained a permanent injury, it clearly did not result from Defendants' decision to transport him to the MWRC facility given that he arrived at the facility within a little over an hour of his injury and he was accessed by medical personnel immediately upon his arrival.

course of treatment would have been different had Defendants taken him to a hospital emergency room rather than to the MWRC facility. This action represents the classic example of someone who has received medical treatment but prefers a different course of treatment, and as such, it does not establish deliberate indifference. See Hamm v. DeKalb Cnty, 774 F. 2d 1567, 1575 (11th Cir. 1985) (Although plaintiff "may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.").

## IV.    CONCLUSION

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment be **granted** and that Plaintiff's action against Defendants be **dismissed with prejudice.**

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); **Fed. R. Civ. P.** 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district

20

court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." *11th Cir. R. 3-1.*

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **5th** day of **July, 2017.**

_____**/s/ SONJA F. BIVINS**_____
**UNITED STATES MAGISTRATE JUDGE**

21